## Cochran, et al. v. Simmons, Administrator, et al.

(Decided October 30, 1925.)

### Appeal from Bullit Circuit Court.

1. Trial—Rules Governing Introduction of Evidence May be Waived. —Rules governing introduction of evidence and determining what is and what is not competent evidence may be waived.

2. Trial—Irregularity in Mode of Proof Held Waived, where no Objections or Exceptions Made.—In suit to determine amount of advances to be charged testator's heirs, any irregularity in mode of proof by bank cashier as to what books of bank showed held waived where his evidence was not objected to either at time it was offered or by filing exceptions to it.

3. Descent and Distribution—Evidence Held Not to Show Heir Received Amount of Judgment Obtained Against Another by Testator on Mortgage as Advancement.—In suit to determine amount of

advances to be charged against testator's heirs, evidence held not to show that heir received amount of a judgment obtained against another by testator on a mortgage, which mortgage, after rendition of judgment, testator had assigned to heir.

4. Descent and Distribution—Advances Accounted for at Value when Made.—Advancements are to be accounted for at their value when made.

5. Descent and Distribution—Charge for Advancement for Value of Lots Held Unreasonable.—Charge of $450.00 as an advancement for value of two lots given by testator to heir held unreasonable and reduced to $150.00, where testator paid but $70.00 for the two lots and gave them to heir just after he bought them.

6. Descent and Distribution—Charge for Advancement for Lumber Reduced.—Charge of $150.00 as an advancement from testator to heir for lumber gotten from clubhouse, reduced to $50.00, where value of lumber was fixed by witness at $38.00.

7. Descent and Distribution—Testimony as to Testator's Statement of Quantity of Corn Received from Heir Held Incompetent, on Issue of Advancement.—In suit to determine value of advancements of corn by testator to heir, testimony of witness that testator stated that he only got two loads of corn from amount which he placed on form of heir held incompetent, where witness did not say that her was then present, or that testator said that heir got the corn.

8. Descent and Distribution—Testimony as to Testator's Statement that he Gave Heir Corn Held Incompetent, on Issue of Advancement.—In suit to determine value of testator's advancements of corn to heir, witness' testimony that testator had said that he gave heir corn which was placed on her property held incompetent, where he did not say that heir was then present, or that testator said that heir got the corn.

9. Descent and Distribution—Administrator Held to have Burden of Proving Advancement.—In suit to determine value of testator's advancements of corn to heir, burden was on administrator to prove that heir got the corn.

10. Descent and Distribution—Evidence Held Not to Prove Heir Received Advancement of Corn.—In suit to determine value of testator's advancements of corn to heir, administrator held not to have proved that heir received corn.

11. Descent and Distribution—Heir Not Chargeable with Sum for Tiling as Advancement.—Heir held not chargeable with $400.00 for tiling as an advancement from testator, where tiling was used to drain a farm belonging to her mother, though heir was using or occupying it.

12. Descent and Distribution—Heir Held Not Entitled to Deduction from Advancement for Taxes.—Heir held not entitled to deduction from advancements made him by testator for taxes paid on a farm belonging to heir and on his personal property.

13. Descent and Distribution—Use of Land Must be Accounted for as Advancement.—Use of land, which is enjoyed by a child, must be accounted for as an advancement.

14. Descent and Distribution—Child Entitled to Credit on Advancements for Value of Improvements.—Where child is charged as an advancement with rent for use and occupation of land belonging to his father, child is entitled to credit upon such claim for value of permanent improvements he makes on property.

CHARLES CARROLL for appellants.

J. F. COMBS and BEN CHAPEZE for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

On February 16, 1916, G. W. Simmons died intestate in Bullitt county, Kentucky. Considerable litigation has grown out of the settlement of his estate, and the reader of this opinion is referred to 177 Ky. 563, 197 S. W. 930, 178 Ky. 402, 199 S. W. 66, where decisions of this court upon questions growing out of the settlement of this estate may be found.

Lula Cochran is complaining of the action of the Bullitt circuit court is fixing the amount to be charged to her as advancements from her father, at $10,538.80, the amount to be charged to her brother, S. B. Simmons, at only $8,985.00, and the amount to be charged to her brother, W. N. Simmons, at only $7,450.00.

G. W. Simmons had been a very successful man. He had accumulated an estate of almost a quarter of a million dollars, and during his life he had been very generous, and made many gifts to his children. After his death, the question arose of accounting for these sums as advancements, and in this litigation, which was originally begun for the settlement of his estate, the larger part of the record is devoted to this question. During the progress of the litigation, this matter was referred to a commissioner, with directions to take proof and to make a report, showing the sums so advanced. On July 12, 1919, the commissioner reported. Exceptions were filed to this report of the commissioner, and a great quantity of proof taken, which, added to the proof already heard by the commissioner, has made this a very large record.

On April 24, 1920, the court passed on these matters, and fixed the advancements as stated. Among the items charged to Lula Cochran was one of $444.80, that being

the amount of a judgment obtained against one Kneisler by G. W. Simmons upon a mortgage, which mortgage was, after the rendition of the judgment, assigned by G. W. Simmons to Lula Cochran. The evidence of Kneisler is that when he went to pay this judgment, he learned of this assignment, and was advised by his attorney not to pay it until the lien was released by Lula Cochran. On September 28, 1915, Kneisler drew a check on the People's Bank of Shepherdsville, Ky., payable to the order of Lula Cochran, for $444.80. This check was written by J. W. Hardaway, the cashier of the bank. It was endorsed, "Lula Cochran by G. W. Simmons." On October 2, 1915, the bank paid this check. J. W. Hardaway testified that on that day the account of G. W. Simmons was credited by $444.80. It is insisted here that the evidence of Hardaway as to what the books of the bank showed was not competent, and the case of Baskett, et al. v. Rudy, 186 Ky. 208, 217 S. W. 112, is cited and relied upon as authority; but there is this difference between this and the Baskett case: The Baskett case shows that the entire testimony of the assistant cashier of the bank "was objected to by appellants, including the copy of the account, filed with his deposition. The witness did not pretend to have any personal knowledge of the transactions aside from the record, except a very vague and insufficient knowledge, which proved nothing." In this case, not only did Hardaway, from his testimony, manifest a knowledge of this transaction, independent of the record, but there was no objection to his testimony. In their efforts to arrive at the truth, the courts have adopted rules governing the introduction of evidence and determining what is and what is not competent evidence, but these rules may be waived, and frequently they are waived. In this instance, by making no objection to the evidence of Hardaway, either at the time it was offered or by filing exceptions to it, the appellees waived the irregularity in proving this account, and cannot be heard to object to it now. If objection had then been made to Hardaway's testimony about the account of Mr. Simmons, the party offering to prove this account by Hardaway would in all probability have proved this account in the proper way. The appellees had in their possession the books and papers of G. W. Simmons, and if Hardaway's testimony had been untrue, they could have shown that by the production of their father's passbook.

They did not do that, and on cross-examination S. B. Simmons was forced to admit that his father had received credit on that day for $444.80. We have concluded that the proof does not show that Mrs. Cochran got this $444.80, hence she should not be charged with it.

In the judgment, Mrs. Cochran was charged with $350.00 for a lot known as the Betty Mace lot, and $100.00 for a lot known as the John Burke lot, and appellees in their testimony say these lots were worth that then, but the rule is that the advancements are to be accounted for at their value when the advancement is made. See Ward, et al. v. Johnson, et al., 124 Ky. 1, 97 S. W. 1110, 30 Ky. L. R. 240. Her father gave her those lots just after he bought them. He paid $60.00 for the Betty Mace lot and $10.00 for the John Burke lot, a total of $70.00, and we feel that the charge of $450.00 is unreasonable. We will reduce that charge to $150.00.

She was charged with $150.00 for lumber gotten from the clubhouse. The proof on this subject is not very clear. The only witness who attempted to fix the value of the lumber fixed it at $38.00, and we have accordingly reduced this item by $100.00, only charging Mrs. Cochran $50.00 on account of lumber.

Mrs. Cochran was charged $2,600.00 for corn and hay, but the proof on this item is very vague and indefinite. No witness undertook to say even what year she got this, let alone how much she got. They content themselves with a general charge that Mrs. Cochran got corn and hay from her father, without ever undertaking to say when, where or how much. She admits getting some corn and hay, for which she says she paid, and we find in the record four checks given by the Long View Stock Farm, with which she is connected, for corn and hay. Mrs. Cochran lost her home by fire, and shortly thereafter, her father sent her one hundred bushels of corn which he bought from a man named Hays, and 20 bushels of corn which he bought from a man named Clayton. Mrs. Cochran says she has never paid for these and that her father paid Hays $30.00 for the corn gotten from him, and Clayton $10.00 for the corn gotten from him, which makes a total of $40.00. These sums have been charged to her. because she made no objection thereto. Mrs. Cochran occupied the house on what is known as the McKay place, which belonged to her father. Frequently she would cultivate portions of this McKay place under dif-

ferent contracts made with her father, but usually her possession was limited to the house, barn and outbuildings. Occasionally, however, her father used some of these, and perhaps on more than one occasion he put corn in the cribs on the McKay place. An effort was made to show that at one time, not even the year being stated, two cribs situated on the McKay place, which as we have said she occupied, were filled with corn belonging to her father, and that she got this corn. We have carefully examined the record for evidence to support that contention. It is shown by Mr. Culmer that these cribs would hold about 600 or 700 bushels each. It was shown by Mr. Price that he filled both of the cribs with corn in the shuck. He also testified that Mrs. Cochran's father told the witness that he only got two loads of that corn. The witness did not say that Mrs. Cochran was then present, or that Mr. Simmons said that either Mr. or Mrs. Cochran had got the corn, and if he had said it, his statement would not have been competent, and as timely objection was made to that evidence, it cannot be considered. See Bailey's Admr., et al. v. Barclay, 109 Ky. 636, 60 S. W. 337, 22 R. 1244.

S. B. Simmons said: "Old man Price raised the corn. He chopped and hauled a crib of corn to the McKay place. My father said he gave Mrs. Cochran this crib of corn." This evidence was incompetent for the same reason. Mrs. Cochran introduced John Davis, a man who worked for her and did her feeding. He was asked who fed that corn, and he said that he did not know. As he fed and attended to Mrs. Cochran's stock, it would appear that if she had fed this corn, he would have known it. He was not asked what became of the corn. Her son, Simmons Cochran was introduced as a witness and was asked about this corn, and if his mother got it. He said that she did not. The burden was on appellees to prove that she got this corn. Their proof failed. We cannot feel that she should be charged with this item.

Mrs. Cochran is charged with $400.00 for tiling. This tiling was used by Mrs. Cochran to tile and drain a farm belonging to her mother, and while it is true that she was using or occupying the farm, we cannot feel that she ought to be charged with the tiling which she put in her mother's farm.. We have, accordingly, eliminated this item. We have left the other items charged against her just as they were in the judgment. When these items are

eliminated, the sums charged against Mrs. Cochran as advancements total $6,594.00.

S. B. Simmons was allowed a credit for $4,200.00 upon a claim for rents asserted against him, and among the items making up this credit is one of $960.00 for taxes paid upon the Phelps farm. It appears from an examination of the tax receipts that $534.00 of these taxes was not paid on the Phelps farm, but was paid upon a farm belonging to S. B. Simmons, and upon his personal property. This sum should be deducted from the credit allowed him, thus increasing the advancements made to him to $9,519.00.

It is urgently insisted that S. B. Simmons is not entitled to any credit for the improvements made on this land, and that if he is entitled to anything, it is only for the enhancement in the vendible value of the land, and that as no enhancement was shown, he is entitled to nothing; but we cannot agree to this, for it is well settled in this state that the use of land which is enjoyed by a child must be accounted for as an advancement.

See Boblett, et al. v. Barlow, 26 Ky. L. R. 1076, 83 S. W. 145. It is equally well settled that where a child is charged as an advancement with rent for the use and occupation of land belonging to his father, the child is entitled to credit upon this rent claim for the value of the permanent improvements he makes upon the property.

See Wakefield, et al. v. Gilliland, 13 Ky. L. R. 845, 18 S. W. 768, and Cummins, et al. v. Bradford, et al., 5 Ky. Opin. 78; also Ward v. Johnson, *supra.*

The evidence of the value of the improvements erected by S. B. Simmons is by no means satisfactory, but in the state of the record, we are unable to say that the finding is erroneous. With the single exception of the matter of taxes, the judgment of the chancellor as to the advancement made S. B. Simmons is approved.

It appears that W. N. Simmons made some improvements on the farm which he occupied, but as he has prosecuted no cross-appeal, we cannot disturb that finding.

To undertake to discuss in detail the various items that go to make up these several advancements, or to undertake to discuss the various other items that it is alleged should be charged as advancements, would extend this opinion to an unusual and unnecessary length, and serve no useful purpose.

The judgment is reversed and the cause remanded with directions to charge advancements as follows: Lula Cochran, $6,594.00; W. N. Simmons, $7,459.00; and S. B. Simmons, $9,519.00.